UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
                                    :
MELCO MARITIME LLC,                 :   08 Civ. 8085 (LAP)
                                    :
            Plaintiff,              :   MEMORANDUM & ORDER
                                    :
    v.                              :
                                    :
INTER ALYANS LTD.,                  :
                                    :
            Defendants.             :
                                    :
- - - - - - - - - - - - - - - - - -X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/28/09

LORETTA A. PRESKA, Chief United States District Judge:

    On September 18, 2008, Plaintiff initiated this maritime action and sought a Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. On May 4, 2009, Plaintiff initiated arbitration proceedings against Defendant in London, and on December 17, 2009 a Final Arbitration Award was issued in Plaintiff's favor. By letter dated December 23, 2009 (attached), Plaintiff requested leave to file a Motion to Recognize, Confirm and Enforce Arbitration Award. For the reasons set forth below, Plaintiff's request is denied.

    On October 16, 2009, the Court of Appeals for the Second Circuit held that electronic fund transfers ("EFTs") being processed by an intermediary bank are not subject to

attachment under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. Shipping Corp. of India, Ltd. v. Jaldhi Overseas Pte Ltd., No. 08-3477, No. 08-3758, 2009 WL 3319675 (2d Cir. Oct. 16, 2009). On November 13, 2009, the Court of Appeals concluded that because the decision in Jaldhi was a "jurisdictional ruling," its holding must be applied retroactively. Hawknet, Ltd. v. Overseas Shipping Agencies, No. 09-2128, 2009 WL 3790654, at *2 (2d Cir. Nov. 13, 2009). According to Plaintiff's Complaint, the funds it sought to attach included property that "may be held, received or transferred for [Defendant's] benefit at, moving through, or within the possession, custody or control of banking/financial institutions . . . ." (See Complaint, Prayer for Relief, at C.) In its December 23 letter, Plaintiff notified this Court that it restrained $60,139.40 pursuant to service of an Ex-Parte Order of Attachment and accompanying Writ. (See dkt. no. 3.) However, such funds appear to be EFTs, and, as such, the recent Court of Appeals' decisions in Jaldhi and Hawknet require this Court to determine if it has personal jurisdiction over Defendant.

Accordingly, it is hereby

ORDERED that Plaintiff shall show cause by January 12, 2010 why the attachments should not be vacated and the action dismissed pursuant to Jaldhi and Hawknet.

SO ORDERED.

Dated: New York, New York
December 23, 2009

*Loretta A. Preska*
LORETTA A. PRESKA, CHIEF U.S.D.J.



Lennon,
Murphy &
Lennon, LLC
ATTORNEYS AT LAW

The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
phone (212) 490-6050
fax (212) 490-6070
www.lenmur.com

Tide Mill Landing
2425 Post Rd, Suite 302
Southport, CT 06890
phone (203) 256-8600
fax (203) 256-8615
mail@lenmur.com

December 23, 2009

*Via Facsimile (212) 805-7941*
Hon. Loretta A. Preska
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1320
New York, New York 10007

      Re:    **MELCO MARITIME LLC. V. INTER ALYANS LTD.**
             Docket No. 08 Civ. 8085 (LAP)
             Our Ref: 1581

Dear Judge Preska:

      We write as a supplement to our letters to your Honor of December 15 and 17, 2009 in support of maintaining this Rule B maritime action.

      We are attorneys for the Plaintiff in this admiralty action brought pursuant to Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure. On September 23, 2008, an Ex Parte Order authorizing process of maritime attachment was issued permitting restraint of Defendant's property in the hands of garnishee banks located within the Southern District of New York.

      Defendant's property was restrained on May 1, 2009 by American Express Bank in the amount of $57,700.00 and on August 24, 2009 by Citibank in the amount of $2,439.40, pursuant to service of the Ex-Parte Order of Attachment and accompanying Writ. Notice of the attachment was duly sent to the Defendant pursuant to the Local Rules. However, Defendant has failed to answer to the notice of attachment.

      Please find attached the signed Final Arbitration Award issued on December 17, 2009 (an unsigned copy of which was previously submitted to your Honor.)

      We hereby request leave to file a Motion to Recognize, Confirm and Enforce Arbitration Award. We thank your Honor for consideration of this request and the requests set forth in our letters to your Honor on December 15 and 17, 2009.

                                                    Respectfully submitted,

                                                   Coleen A. McEvoy

CAM/bhs
Enclosure

CAM/bhs
Enclosure

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

BETWEEN:-

      MELCO MARITIME LLC of Nevada, USA

                     Claimant
                     (Disponent Owners)

            - and -

      INTER ALYANS LTD of Baku, Azerbaijan

                       Respondent
                       (Charterers)

m.v. "CEMREM"

Charterparty dated 10th June 2008

---

FINAL ARBITRATION AWARD

---

**WHEREAS:**

1. By a voyage charterparty concluded and evidenced by a fixture recapitulation message dated 10th June 2008 and referring to a pro-forma charterparty essentially in the terms of the Gencon Box Layout form, as amended ("the charterparty"), the Claimant ("the Owners") chartered the mv. "CEMREM" to the Respondent ("the Charterers") to carry a cargo of minimum 16,800 mt up to the full cargo capacity of the vessel of clinker in bulk from Samsun to Poti on terms and conditions more particularly set out in the charterparty.

2. Clause 42 of the charterparty provided:-

> "ARBITRATION: ANY DISPUTE ARISING OUT OF THIS CONTRACT SHALL UNLESS THE PARTIES AGREE FORTHWITH ON A SINGLE ARBITRAOTR. BE REFERRED TO THE FINAL ARBITRATION IN LONDON OF TWO ARBITRATORS WHO SHALL BE COMMERCIAL MEN CARRYING ON BUSINESS, ONE TO BE APPOINTED BY EACH OF THE PARTIES WITH POWER TO SUCH ARBITRATOR TO APPOINT AN UMPIRE WHOSE DECISION SHALL BE FIND [sic] AND BINDING UPON BOTH PARTIES. ENGLISH LAW SHALL GOVERN INTERPRETATION/EXECUTION OF THIS CONTRACT. IF ONE PARTY FAILS TO APPOINT AN ARBITRTOR WITHIN SEVEN CLEAR DAYS THAN [sic] THE ARBITRATOR WHO WAS APPOINTED BY OTHER PARTY BECOMES SOLE ARBITRATOR AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES."

3. Disputes arose as detailed hereafter for the determination of which the Owners, appointed me, the undersigned Christopher J W Moss of 4 Charlotte Place, Wilton Road, London SW1V 1DP on 4th May 2009 and called upon the Charterers to appoint an arbitrator within fourteen days, failing which they informed the Charterers that I would become sole arbitrator in accordance with Clause 42of the charterparty.

4. Pursuant to Clause 42 of the charterparty, the seat of this arbitration is London.

5. No response was received from the Charterers to this request. Accordingly, on 15th June 2009 the Owners, through their Istanbul lawyers, called upon me to accept appointment as sole arbitrator by default.



6.  I confirmed my acceptance of the appointment to act as sole arbitrator on 16th June 2009, sending a message to "Ilhan Trading Ltd" whom I was advised by the Owners' lawyers are the representatives in Turkey for the Charterers.

7.  The seat of the arbitration ...(?)

8.  On 17th June I received a letter from the Ercin Bilgin Bektasoglu Law Firm in Istanbul advising me that they were acting on behalf of Ilhan Trading Ltd. I was informed that Ilhan Trading were neither representatives nor agents in any capacity whatsoever for the Charterers.

9.  The Owners' lawyers responded to the copy which I sent them of this message by advising me that their clients, the Owners, had chartered "many vessels" to the Charterers and that Ilhan Trading had always acted as the Charterers' brokers in connection with such fixtures. These assertions were supported by copies of correspondence.

10. The Owners, through their Istanbul lawyers, served claim submissions with supporting documents on 4th August 2009. On 13th August 2009 I Ordered that the Charterers serve defence submissions (and submissions in support of any counterclaim) by no later than 11th September.

11. On 12th August I received a telefax message from Ercin Bilgin Bektasoglu stating that they wished to inform me for a second and the last time that Ilhan Trading were not representatives or agents in any capacity for the Charterers and that they could not accept service of notices or documents of any kind on their behalf.

12. On 7th October 2009 the Owners' Istanbul lawyers advised me that they had heard nothing from the Charterers in response to my Order requiring them to serve defence and counterclaim submissions by 11th September 2009. The Owners' lawyers



therefore asked me to make an Order in Final and Peremptory terms for service of defence submissions and to confirm that if I did not receive any submissions within the time allowed, I would proceed to an Award.

13. On 8th October 2009 I sent the following message to the parties:-

> "I refer to the message which I have received from Fora Law Office dated 7th October in which they refer to the fact that they have heard nothing from the Respondents in response to the Order which I made on 13th August for service of Defence submissions by 11th September.
>
> I confirm that I have heard nothing from the Respondents either.
>
> In the circumstances it seems to me that the Disponent Owners are clearly entitled to a Final Order for service of the Defence submissions. Since no Final Order has as yet been made, it cannot be a Final and Peremptory Order. However, Inter Alyans Ltd should be aware that if this Order is not complied with, a further Order with a very short time limit will follow. That will be a Final and Peremptory Order. The effect of that will be that the submissions are closed and that the Tribunal will then consider the case on the basis of the submissions put before it by the Claimants.
>
> If, having done so, it is satisfied that the Claimants are entitled to an Award, then it will proceed to an Award without further notification to the parties.
>
> On that basis I now make a Final Order that Defence submissions in this arbitration be served by no later than close of business, 15th October."

14. No response was received to this Order. On 20th October 2009 the Owners' lawyers therefore requested me to make a Final and Peremptory Order for service of any submissions on behalf of the Charterers.

15. On 27th October 2009 I sent the following message to the parties:-

> "I refer to Fora Law Office's fax message of 20th October in which they advise that they have heard nothing from the Respondents and request that a Final and Peremptory Order be made for service of Defence submissions.
>
> I have heard nothing from or on behalf of the Respondents. In the circumstances it seems to me that I must now make a Final and Peremptory Order for service of Defence submissions.
>
> I therefore now Order that Defence submissions be served by no later than 3rd November.
>
> It must be emphasised to the Respondents that if they do not comply with this Order I shall be bound to conclude that they have no intention of participating in the arbitration. Should that situation arise, I shall then consider the documents and submissions put before me on behalf of the Claimants, and, if appropriate, proceed to an Award."

16. I received no response from or on behalf of the Charterers to my message of 27th October. On 4th November 2009 I received a message from the Owners' lawyers stating that they had heard nothing from the Charterers either. They requested me to proceed to my Award on the documents and submissions before me.



17. On 4th November 2009 I confirmed that the submissions were closed and that I was proceeding to an Award on the documents and submissions before me.

18. Notwithstanding the absence of any submissions from the Charterers I was satisfied that they were fully aware of this arbitration and that they had been given every reasonable opportunity to participate but had chosen not to do so. In the circumstances I concluded that it was appropriate for me to proceed to an Award on the basis of the documents and submissions put before me on behalf of the Owners.

19. The Owners claimed discharge port demurrage in the sum of US$98,511.10, together with interest and costs.

20. There was no request for an oral hearing.

**NOW I**, the said Christopher J W Moss, having taken upon myself the burden of this arbitration and having carefully and conscientiously considered the evidence put before me and the submissions addressed to me and having given due weight thereto, **DO HEREBY MAKE, ISSUE AND PUBLISH** this my **FINAL AWARD** as follows:-

A. **I FIND AND HOLD** that the Owners' claim succeeds in the sum of US$98,506.66 and no more.

B. **I THEREFORE AWARD AND ADJUDGE** that the Charterers shall forthwith pay to the Owners the sum of US$98,506.66 (ninety-eight thousand, five hundred and six United States dollars and sixty-six cents) together with interest on this sum at the rate of 5% per annum, compounded with three monthly rests from 1st August 2008 to the date of payment.

C.  **I FURTHER AWARD AND ADJUDGE** that the Charterers shall bear and pay the Owners' costs of the arbitration, including the costs of my **FINAL AWARD** in the sum of £2,060.00, **PROVIDED** always that if, in the first instance, the Owners shall have paid any part of the costs of this my **FINAL AWARD**, they shall be entitled to immediate reimbursement by the Charterers of the sum so paid, together with interest at the rate of 5% per annum, compounded with three monthly rests from the date of payment to the date of reimbursement and **I RESERVE** jurisdiction to assess the Owners' costs of the arbitration if these cannot be agreed between the parties.

Given under my hand in London this 17th day of December 2009.

..................................
Sole Arbitrator

..................................
Witness

